## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division



FILED

JAN 2 6 2010

CLERK, US DISTRICT COURT
NORFOLK, VA

**EVAN SAWYER MASTER BUILDER INC.,**

**WARREN BARNES, and**

**KENNETH BARNES**

     *Plaintiffs*

     v.                      Civil Action No. _4:10cv10_

**CHRISTOPHER SQUYARS,**

**MICHELLE SQUYARS,**

**MARION TALKEN,**

**DEBORAH WAGNER,**

**J.F. HOLDEN BUILDER LLC, and**

**TOWNE BANK**

     *Defendants*

## C O M P L A I N T

## JURISDICTION

1.    This Court has exclusive jurisdiction under 28 U.S.C. § 1338 over the causes of action asserted herein for copyright infringement, 17 U.S.C. §§ 101 *et seq.*

1

2.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over state law causes of action asserted herein arising from the same nucleus of operative facts and so related to the federal claims to be part of the same case or controversy under Article III of the Constitution.

## COUNTS

3.     This Complaint includes the following counts:

*Copyright Counts:*

| | |
|---|---|
| Count I | Interim Injunctive Relief |
| Count II | Copyright Infringement by the Squyars and Talken |
| Count III | Copyright Infringement by Holden |
| Count IV | Copyright Infringement by Towne Bank |

*State Law Counts:*

| | |
|---|---|
| Count V | Tortious Interference with Contract by Holden and Towne Bank |
| Count VI | Specific Performance of Contract |
| Count VII | Breach of Contract |
| Count VIII | (A) Abuse of Process, (B) False Imprisonment, and (C) Malicious Prosecution, by the Squyars |
| Count IX | (A) Abuse of Process, (B) False Imprisonment, and (C) Malicious Prosecution, by Deborah Wagner |
| Count X | Conspiracy and Defamation |

## COMMON NUCLEUS OF FACTS

4.     Plaintiff Evan Sawyer Master Builder Inc. (ESMB) and Defendants Christopher Squyars and Michelle Squyars (the Squyars) and Marion Talken (Talken) are parties to a Retainer Agreement dated November 6, 2008 (Exhibit 1).

2

5.    The Retainer Agreement states in bold letters above the signatures:

**Any and all Plans and/or Designs generated will remain the exclusive property and Copyright of Evan Sawyer Master Builder Inc.**  *See, Retainer Agreement, Exhibit 1,  Page 2.*

6.    ESMB, the Squyars and Talken are parties to a Construction Contract dated December 16, 2008 (Contract) (Exhibit 2).

7.    The Contract provides ESMB with exclusive possession and ownership of the property until final payment of the $773,400 purchase price.

8.    Section F of the Contract provides:

**Builder will grant possession immediately after final payment.**

*Contract, Exhibit 2, Section F*

9.    Section I of the Contract provides:

**The Owner will not occupy the house until final payment is made in accordance with this agreement.**

*Contract, Exhibit 2, Section I.*

10.    Section H of the Contract provides:

**Until the final payment by Owner to Builder is made in accordance with this agreement, the house either under construction or completed, and all materials and supplies stored or installed on the property, remain the property of the Builder.**

*Contract, Exhibit 2, Section H.*

11.    Section V.14 of the Contract entitles ESMB to receive a conveyance of title to the real property upon a default by Owner:

**"In the event of a Default by Owner" Builder may "demand and receive a conveyance of the property upon which the house has been built, together with all improvements thereon."**

*Contract, Exhibit 2, Section V.14.*

3

12.     On July 23, 2009 the Squyars wrote to ESMB indicating that contract disputes had arisen (Exhibit 3).

13.     The Squyars July 23, 2009 correspondence to ESMB:

(i) complains of ca. $50,000 in extra charges ordered by Marion Talken, mother of Michelle Squyars and mother-in-law of Christopher Squyars, and a party to the Construction Contract;

(ii) purports to cancel Marion Talken's further authority to incur any additional charges under the Contract by Power of Attorney;

(iii) purports to condition payment of invoices for the extra work ordered on substantiation and detail not contemplated by contract or standard industry practice; and

(iv) alleges an extra-contractual term that ESMB would accept the Squyars' existing residence "in exchange for $400,000 toward the" Contract price.

14.     On August 4, 2009 certain individuals used paint ball guns at the property in the presense of and without objection by Christopher Squyars.

15.     On August 11, 2009 the Squyars sent ESMB an email confirming the desired foyer configuration for the house. (Exhibit 4)

16.     On August 12, 2009 the Squyars sent ESMB an email confirming various details and requesting various changes in work. (Exhibit 5)

17.     The Contract is not terminable at will.

18.     On September 16, 2009, attorney Deborah Wagner purported to terminate the Contract on behalf of the Squyars and Talken, referring to a "paint ball game"

4

conducted "for your own amusement," which Wagner claimed "breached said contract and your ethical duties as a builder." (Exhibit 6)

19.     The purported "paint ball game" was neither a breach, nor a material breach giving rise to a termination right which under Virginia Law requires **"something which is so important and central to the contract that the breach of the obligation defeats the purpose of the contract."** *Spotsylvania County School Bd. v. Seaboard Sur. Co.*, 243 Va. 202, 211-212, 415 S.E.2d 120 (1992) *citing* 1 S. Stein, *Construction Law* § 4.14 (1991).

20.     The "paint ball game" did not in any way violate the Contract.

21.     The "paint ball game" did not in any way harm the real property or the physical structures which had not been paid for and which remained within the exclusive possession, control, responsibility and ownership of ESMB until final payment pursuant to the express terms of the Contract (*see paragraphs 7 – 10 above, Sections F, H,I and V of the Contract*).

22.     Although consent was not required under the Contract, the individuals involved in the paintball activity had the acknowledgement and consent of Christopher Squyars on August 4, 2009, and the Squyars reaffirmed the Contract and waived any alleged breach or responsibility of ESMB by proceeding with performance and providing instructions in email correspondence on August 11, 2009 and August 12, 2009. (Exhibits 4 & 5).

23.     The attempted termination by Wagner was not motivated by the immaterial and insignificant August 4, 2009 use of water soluble paintballs (whether or not properly attributable to ESMB), but was instead motivated by the $450,000 placed

into dispute by the Squyars' July 23, 2009 letter complaining of Talken's ca. $50,000 in extra work, and improperly demanding an existing residence be accepted in lieu of $400,000 in payments under the Contract. (*See paragraph 11 above, Exhibit 3*)

24.     Section Y of the Contract is a merger clause, and nothing in the entire contract provides that additional terms may be unilaterally imposed, or that ownership and possession may be asserted without Final Payment of the full consideration of the contract price, as expressly required by Sections I and V as a condition precedent to such possession by the Squyers and Talken.

25.     On September 15, 2009, the day before the purported termination, ESMB submitted a draw request to Towne Bank for $157,000.

26.     On September 16, 2009, after the purported termination, a representative of Towne Bank told Warren Barnes, president of ESMB, that Towne Bank would not pay ESMB's draw request and offered him $50,000 to 'just go away.'

27.     The same Towne Bank representative also purported to negotiate with Warren Barnes over a period of time, which discussions proved to be in bad faith when it was discovered that the Towne Bank representative had already hired defendant JF Holden Builder LLC (Holden) to complete the house pursuant to ESMB's copyrighted plans.

28.     Also on September 16, 2009, Wagner illegally asserted ownership and possession over ESMB's building and materials, which ESMB had purchased and installed without advance compensation, and which remain the exclusive property of ESMB both in fact and by Contract, by posting signs on her letterhead indicating a false claim of right to ownership and possession thereof (Exhibit 15).

29.     Also on September 16, 2009, Wagner and the Squyars caused a magistrate to issue arrest warrants for trespass alleged against Warren Barnes and Kenneth Barnes, based on false representations included in Criminal Complaints signed by the Squyars in which they purported to have ownership and possession rights superior to those of ESMB, despite their non-payment and the express terms of the Contract to the contrary. (Exhibit 13)

30.     As a result of the false representation and acts of the Squyars at the direction of Wagner, Warren and Kenneth Barnes were subject to false arrest and imprisonment.

31.     The false representation and acts of the Squyars at the direction of Wagner, were taken for an improper purpose of harassment and intimidation in a civil matter, and were therefore malicious and resulted in malicious prosecution of Warren and Kenneth Barnes.

32.     Wagner and the Squyars caused criminal process to be abused in a civil matter involving disputed invoice amounts and an extra-contractual demand that a residence be accepted in lieu of $400,000 in required contract payments.

33.     On September 17, 2009 Wagner and the Squyars caused Warren Barnes to be arrested a second time, this time for an act of others: specifically the mailing and receipt by the Squyars of an invoice sent by ESMB at the request of Squyars and Talken, allegedly in violation of a recognizance condition prohibiting Warren Barnes from contact with the Squyars, but despite no indication that it was Warren Barnes who sent the invoice.

34.     The second arrest of Warren Barnes was an additional abuse of criminal process, false arrest and imprisonment, and malicious prosecution in a civil matter over a routine company invoice which Wagner, the Squyars and Talken previously acknowledged to be due and unpaid, and continue to acknowledge to be due and unpaid. (Exhibit 3)

35.     Wagner and the Squyars conspired with others to lure Warren Barnes under false pretenses to a location where he could be arrested on a Sunday and imprisoned overnight, while falsely reporting to police an unverifiable violation of a recognizance condition by him (Exhibit 14), which was dismissed with a stern warning by the District Court Judge about the abuse of criminal process in a civil matter.

36.     Wagner, the Squyars and Talken enlisted Jeffrey and Sheila Lancour to lure Warren Barnes to a location where he could be found and arrested at their request for an improper and false allegation about the invoice. (Exhibit 7)

37.     The Lancours, whose current residence is assessed for $261,300 total value according to the York County official website, lured Warren Barnes to a million dollar-plus residence ESMB had for sale under the false pretenses that the Lancours were interested and qualified prospective buyers of that property, at which time Wagner contacted the police to have Warren Barnes arrested based on her improper, false and judicially rejected allegation about ESMB's invoice violating his recognizance.

38.     Requests for inappropriate invoice detail had been made continuously and in bad faith, both before and after the purported and improper alleged Contract termination and multiple malicious abuses of criminal process employed to attempt to gain advantage in a civil matter, and avoid the invoices and other Contract obligations.

39.     On October 26, 2009 Wagner wrote to ESMB noting that Towne Bank issued a default notice and that Towne Bank "will move forward with drying-in the home." (Exhibit 10)

40.     On November 2, 2009, the Squyars and Talken submitted a signed request to James City County requesting a building permit for Holden to complete the construction using ESMB's copyrighted plans. (Exhibit 11)

41.     On November 13, 2009, Holden applied for a building permit using an unauthorized copy of ESMB's copyrighted plans. (Exhibit 12)

42.     On November 13, 2009, a building permit was issued to the Squyars, Talken and Holden without plan review, and without a plan review fee, because the ESMB plan upon which it was issued had already been reviewed and approved, and the plan review fee previously paid by ESMB. (Exhibit 12)

43.     On or about November 15, 2009, representatives of ESMB were told by Jay Holden that Towne Bank had hired Holden to complete the house.

44.     On November 18, 2009, Holden provided ESMB a copy of the replacement building agreement which indicates the house is to be completed pursuant to ESMB's approved plans. (*See Section 1, Exhibit 8*)

45.     The Squyars, Talken and Towne Bank jointly engaged Holden as the replacement contractor.

46.     The replacement building contract is directly and unequivocally assigned to Towne Bank by Section 19 thereof (*see Section 19, Exhibit 8*), and Towne Bank is proceeding to complete the project pursuant to ESMB's copyrighted plans, in violation of ESMB's copyright rights and Contract rights.

9

47.    In contrast to the lack of termination rights in the ESMB Contract, the longest and most extensive section of the replacement building contract is section 17, "Cancellation Rights" (*Section 17, Exhibit 8*), indicating awareness of the lack of termination rights in ESMB's Contract and awareness of the impropriety of the attempted termination of ESMB's Contract by each of the Defendants, all of whom are parties to the replacement contract.

48.    On December 3, 2009 the criminal charges against Kenneth Barnes were dismissed by the General District Court.

49.    On December 3, 2009, the ESMB invoice related charge against Warren Barnes was dismissed by the General District Court.

## COPYRIGHT FACTS

50.    ESMB owns the copyrighted plans included in the building permit issued to Holden.

51.    The copyright registration number is VA-1-690-691.

52.    A copy of the certificate of copyright registration is attached hereto as Exhibit 9.

## COUNT I
## INTERIM INJUNCTIVE RELIEF

53.    The facts alleged in the previous paragraphs of this complaint are incorporated herein and repeated in support of this Count.

54.     Section V.14 of the Construction Contract provides that in the event of a default, the Squyars and Talken shall convey the real property to ESMB without compensation. *Contract, Exhibit 2, Section V.14.*

55.     Transfer of the real property to ESMB is the primary remedy and security for non-payment by the counterparties and their inability to pay the "full consideration," which is the alternative contract damages remedy, which inability has been suggested by the inappropriate proffer of an existing residence in lieu of $400,000 in contract payments. *See* Exhibit 3.

56.     ESMB is entitled by Contract to transfer of the real property for the purposes of properly completing the construction of the physical structures that remain the property of ESMB, both in fact and by Contract.

57.     For completed work to date, ESMB is currently owed more than the last purchase price of the real property and more than the fair market value of the real property, which are amounts the Squyars and Talken may be unable to pay.

58.     ESMB will be irreparably harmed by completion of the house by Holden.

59.     Completion by Holden and Towne Bank will irrevocably eliminate the contractual right of ESMB to obtain the property and complete the project.

60.     Tort and contract damages against potentially insolvent defendants are an inadequate alternative to ESMB's Contract right to its physical property and the associated real property.

61.     Injunctive relief is an equitable remedy and Defendants have unclean hands as a result of: (i) raising spurious excuses to paying for invoices for the extra work, (ii) purporting to terminate the Contract on false pretenses, (iii) improperly using

ESMB's copyrighted plans without authorization, (iv) multiple abuses of criminal process to have principals of ESMB baselessly and falsely arrested, imprisoned and maliciously prosecuted.

62.    By contrast, Plaintiffs have restrained themselves to exclusively civil remedies despite Defendants having misappropriated property owned by ESMB both in fact and by Contract, and also despite Defendants having filed false reports to have Warren and Kenneth Barnes arrested.

63.    Accordingly, this Court is requested to issue equitable relief in the form of a preliminary injunction against further work being performed on the property.

## COUNT II
## COPYRIGHT INFRINGEMENT
## BY THE SQUYARS AND TALKEN

64.    The facts alleged in the previous paragraphs of this complaint are incorporated herein and repeated in support of this Count.

65.    By applying for and receiving a building permit with Holden using ESMB's copyrighted plans, the Squyers and Talken caused copyrighted materials owned by ESMB to be reproduced and distributed without authorization, in violation of the Copyright Act, 17 U.S.C. § 501.

66.    By contracting with Towne Bank and Holden to complete construction pursuant to and using ESMB's copyrighted plans, the Squyers and Talken caused copyrighted materials owned by ESMB to be reproduced and distributed without authorization, in violation of the Copyright Act, 17 U.S.C. § 501.

67.     The Squyars and Talken have continued with construction and financing of the construction after being advised of the copyright violation on November 19, 2009. (Exhibit 16)

68.     The Squyars, Talken, Holden and Towne Bank are practical partners in the infringing activity.

69.     Accordingly, this Court is requested to award ESMB damages for copyright infringement by the Squyars and Talken equal to the contract damages and disgorgement of any profits of the Squyars and Talken and their "practical partners," Holden and Towne Bank, with joint and several liability pursuant to *Nelson-Salabes v. Morningside Development*, 284 F.3d 505 (4th Cir., 2002).

## COUNT III
## COPYRIGHT INFRINGEMENT
## BY JF HOLDEN BUILDER LLC

70.     The facts alleged in the previous paragraphs of this complaint are incorporated herein and repeated in support of this Count.

71.     By applying for and receiving a building permit using ESMB's copyrighted plans, Holden caused copyrighted materials owned by ESMB to be reproduced and distributed without authorization, in violation of the Copyright Act, 17 U.S.C. § 501.

72.     By contracting with the Squyars, Talken and Towne Bank to complete construction pursuant to and using ESMB's copyrighted plans, Holden caused copyrighted materials owned by ESMB to be reproduced and distributed without authorization, in violation of the Copyright Act, 17 U.S.C. § 501.

73.     Holden, the Squyars, Talken and Towne Bank are practical partners in the infringing activity.

74.     Accordingly, this Court is requested to award ESMB damages for copyright infringement by Holden equal to actual damages plus disgorgement of profits of Holden and its "practical partners," the Squyars, Talken and Towne Bank, with joint and several liability pursuant to *Nelson-Salabes v. Morningside Development*, 284 F.3d 505 (4th Cir., 2002).

**COUNT IV**
**COPYRIGHT INFRINGEMENT**
**BY TOWNE BANK**

60.     The facts alleged in the previous paragraphs of this complaint are incorporated herein and repeated in support of this Count.

75.     Towne Bank is liable for infringement as a direct infringer by contracting with the Squyars, Talken and Holden to complete construction pursuant to and using ESMB's copyrighted plans, thereby causing copyrighted materials owned by ESMB to be reproduced and distributed without authorization, in violation of the Copyright Act, 17 U.S.C. § 501.

76.     Towne Bank is liable for infringement as a contributory infringer as a result of its supervision of the infringing conduct after declaring a default under its financing documents. *See* Exhibit 10.

77.     With knowledge of the infringement in the Building Agreement with Holden, Towne Bank made a material contribution to the infringement by hiring Holden, and inducing Holden to enter into the Building Agreement and obtain a building permit using ESMB's copyrighted plans.

78.     Towne Bank is therefore a direct party to the building agreement in privity with the others pursuant to Section 17 of the building agreement which unconditionally and directly assigns the agreement in its entirety to Towne Bank without qualification.

79.     Towne Bank has continued with construction and financing of the construction after being advised of the copyright violation on November 19, 2009. (Exhibit 16)

80.     Towne Bank, the Squyars, Talken and Holden are practical partners in the infringing activity.

81.     Accordingly, this Court is requested to award ESMB damages for copyright infringement by Towne Bank equal to actual damages plus disgorgement of profits of Towne Bank and its "practical partners," the Squyars, Talken and Holden, with joint and several liability pursuant to *Nelson-Salabes v. Morningside Development*, 284 F.3d 505 (4th Cir., 2002).

## COUNT V
## TORTIOUS INTERFERENCE WITH CONTRACT
## BY TOWNE BANK AND JF HOLDEN BUILDER LLC

82.     The facts alleged in the previous paragraphs of this complaint are incorporated herein and repeated in support of this Count.

83.     ESMB remains a party to a valid Contract which is not terminable at will and therefore entitled to heightened protection against third party interference under Virginia law.

84.     At all relevant times, Towne Bank and Holden were aware of ESMB's Contract.

85.    At all relevant times, Towne Bank was an assignee of ESMB's Contract and knew its exact terms and that it was not terminable at will.

86.    Towne Bank and Holden knew or should have known that ESMB's Contract was not terminable at will (i) in light of the unusually extensive cancellation rights included in the contract to replace ESMB's existing Contract, and (ii) from the November 19, 2009 letter from counsel to ESMB to Holden and Towne Bank alleging that their activities constituted tortious interference with ESMB's contract.

87.    Towne Bank and Holden (i) improperly agreed with the Squyars and Talken to take over the work of the Contract, and (ii) improperly misappropriated, copied and used ESMB's copyrighted plans.

88.    ESMB has been damaged by the knowing, willful and intentional disruption of its contractual relationship by acts of each of Towne Bank and Holden.

89.    Accordingly, this court is requested to award ESMB tort and punitive damages against Towne Bank and Holden, including joint and several liability for any contract damages awarded against the Squyars and Talken, and for such other amounts to which Plaintiffs may demonstrate they are entitled.

## COUNT VI
## SPECIFIC PERFORMANCE

90.    The facts alleged in the previous paragraphs of this complaint are incorporated herein and repeated in support of this Count.

91.    Section V.14 of the Construction Contract provides that in the event of a default, the Squyars and Talken shall convey the real property to ESMB without compensation. *Contract, Exhibit 2, Section V.14.*

16

92.     Transfer of the real property to ESMB is the primary remedy and security for non-payment by the counterparties and their inability to pay the "full consideration," which is the alternative contract damages remedy, which inability has been suggested by the inappropriate proffer of an existing residence in lieu of $400,000 in contract payments. *See* Exhibit 3.

93.     ESMB is entitled by Contract to transfer of the real property for the purposes of properly completing the construction of the physical structures that remain the property of ESMB, both in fact and by Contract.

94.     For completed work to date, ESMB is currently owed more than the last purchase price of the real property and more than the fair market value of the real property, which are amounts the Squyars and Talken may be unable to pay.

95.     ESMB will be irreparably harmed by completion of the house by Holden.

96.     Completion by Holden and Towne Bank will irrevocably eliminate the contractual right of ESMB to obtain the property and complete the project.

97.     Tort and contract damages against potentially insolvent defendants are an inadequate alternative to ESMB's Contract right to its physical property and the associated real property.

98.     Injunctive relief is an equitable remedy and Defendants have unclean hands as a result of: (i) raising spurious excuses to paying for invoices for the extra work, (ii) purporting to terminate the Contract on false pretenses, (iii) improperly using ESMB's copyrighted plans without authorization, (iv) multiple abuses of criminal process to have principals of ESMB baselessly and falsely arrested, imprisoned and maliciously prosecuted.

17

99.     By contrast, Plaintiffs have restrained themselves to exclusively civil remedies despite Defendants having misappropriated property owned by ESMB both in fact and by Contract, and also despite Defendants having filed false reports to have Warren and Kenneth Barnes arrested.

100.    Accordingly, this Court is requested to issue equitable relief by requiring each of the Squyars and Talken to execute a general warranty deed in recordable form to convey the real property to ESMB.

## COUNT VII
## BREACH OF CONTRACT

101.    The facts alleged in the previous paragraphs of this complaint are incorporated herein and repeated in support of this Count.

102.    The Squyars and Talken are in breach of the Contract.

103.    The Squyars and Talken took possession of the property before final payment and, accordingly, pursuant to Section I of the Contract, **"the house will be considered fully completed in all respects and the full consideration of this agreement will be due and payable."** *See Contract, Exhibit 2, Section I.*

104.    Full consideration under the Contract, less amounts paid, equals $609,830.00.

105.    In addition to amounts due under the contract, the invoices for extra-contractual work are due and unpaid in an amount equal to $53,313.00.

106.    Accordingly, for breach of contract, this Court is requested to award ESMB the Contract damages against the Squyars and Talken in an amount equal to Six Hundred Sixty Three Thousand One Hundred and Forty Three Dollars ($663,143.00).

## COUNTS VIII-A, VIII-B AND VIII-C
## ABUSE OF PROCESS, FALSE IMPRISONMENT,
## AND MALICIOUS PROSECUTION
## BY CHRISTOPHER AND MICHELLE SQUYARS

107.   The facts alleged in the previous paragraphs of this complaint are incorporated herein and repeated in support of this Count.

108.   The Squyars improperly commenced criminal proceedings against Plaintiffs by making false representations about their alleged possession and ownership rights to the property that were inconsistent with ESMB's express and valid Contract rights.

109.   Squyars and Talken had knowledge of the Contract terms.

110.   Squyars and Talken knew the Contract was not terminable at will.

111.   Squyars and Talken knew the "paint ball" incident was not a material breach defeating the purpose of the Contract which could give rise to a termination right they nevertheless purported to invoke on September 16, 2009.

112.   Criminal process was initiated by the Squyars at a time when ESMB had exclusive ownership and possession pursuant to the Contract and a greater financial interest in fixtures and personalty and unpaid invoices than any equity interest of Squyars in the land.

113.   After the initial arrests, the Squyars had Plaintiff Warren Barnes arrested a second time on the baseless grounds over an invoice sent by ESMB.

114.   The arrest was coordinated by Wagner, the Squyars and Jeffrey and Sheila Lacour who lured Warren Barnes to a known location under false pretenses, and resulted in his false arrest on a weekend so release was unavailable until over a day later by the

District Court judge, who later dismissed the charge in its entirety and noted the impropriety of the arrest in response to a civil matter.

115.    The criminal process was malicious and conducted for ulterior motives unrelated to criminal justice.

116.    Accordingly, Plaintiffs Warren and Kenneth Barnes demand actual, tort and punitive damages the Squyars for their malicious prosecution and abuse of process that resulted in the Barnes's false arrests, in an amount not less than $1,000,000 each.

## COUNTS IX-A, IX-B AND IX-C
## ABUSE OF PROCESS, FALSE IMPRISONMENT,
## AND MALICIOUS PROSECUTION
## BY DEBORAH WAGNER

117.    The facts alleged in the previous paragraphs of this complaint are incorporated herein and repeated in support of this Count.

118.    The Criminal Complaints indicate that Squyars acted on the legal advice of Wagner.

119.    Wagner advised the Squyars to swear out criminal complaints without having had probable cause to do so, and she did so for the improper purpose of influencing a civil dispute, not to obtain the ends of criminal justice.

120.    Under Virginia law an attorney is subject to liability for malicious prosecution if it involves abuse of criminal process or other special injury. *See. Ayyildiz v. Kidd*, 220 Va. 1080, 1082, 1085-1086, 266 S.E.2d 108 (1980), *Ely v. Whitlock*, 385 S.E.2d 893, 238 Va. 670 (1989), Restatement of The Law Governing Lawyers, 3d, *Lawyer Civil Liability*, § 57, *comment g:* "A lawyer may also be liable to a nonclient for assisting a client with a proper purpose but by wrongful means, such as threatening the

nonclient with an unfounded criminal prosecution in order to induce the nonclient to cancel a contract."

121.   Under the circumstances of a civil dispute and in light of ESMB's contract rights the matter should have addressed by civil process, and even if ESMB's contract terms were not disclosed to Wagner by the Squyars, under the circumstances of a civil dispute Wagner could have requested issuance of summonses to appear to answer trespass charges in court, but instead Wagner maliciously and in order to intimidate, harass and defame, caused multiple arrests and imprisonment without justification.

122.   Wagner caused the Squyars to make false representations about their alleged possession and ownership rights that were inconsistent with ESMB's express and valid Contract rights.

123.   Wagner had knowledge of the Contract terms.

124.   Wagner knew the Contract was not terminable at will.

125.   Wagner knew the "paint ball" incident was not a material breach defeating the purpose of the Contract which could give rise to a termination right she nevertheless purported to invoke on September 16, 2009, which requires **"something which is so important and central to the contract that the breach of the obligation defeats the purpose of the contract."** *Spotsylvania County School Bd. v. Seaboard Sur. Co.*, 243 Va. 202, 211-212, 415 S.E.2d 120 (1992) *citing* 1 S. Stein, *Construction Law* § 4.14 (1991).

126.   Criminal process and arrests, as opposed to summonses or civil process, were initiated at the direction of Wagner.

127.   Criminal process and arrests, as opposed to summonses or civil process, were initiated at the direction of Wagner with malice at a time when ESMB had an

interest in fixtures and personalty, and acknowledged and unpaid invoices, greater than any equity interest in the land, and exclusive ownership and possession of the proprrty pursuant to the Contract.

128. After the initial arrests, Wagner caused Warren Barnes to be arrested a second time by directing and coordinating an illegal conspiracy to have him arrested and imprisoned overnight on the frivolous and judicially rejected grounds that a company invoice sent by ESMB violated the terms of his recognizance.

129. At the request of Wagner and the Squyars, Jeffrey and Sheila Lacour lured Warren Barnes to a location under false pretenses, at which time Wagner called police to have him arrested

130. Wagner coordinated the conspiracy on a weekend to ensure her intimidation and harassment of Warren Barnes included imprisonment overnight, before release by the District Court judge was available on Monday.

131. The charge of violating the terms of his recognizance was dismissed by the District Court judge with a warning about the impropriety of causing an arrest in a civil matter.

132. Wagner's false allegation of a termination right, false assertion of property rights, and abuse of criminal process through improper instigation of magistrate and police action, were the direct cause of the abuse of process, malicious prosecution and the needless and needlessly prolonged false imprisonment, all in an unethical and highly improper attempt to gain advantage and intimidate in a civil matter, which goes far beyond the well known prohibition of threatening criminal prosecution in a civil matter.

133.    The criminal process was malicious and conducted for ulterior motives unrelated to the ends of criminal justice.

134.    Accordingly, Plaintiffs Warren and Kenneth Barnes demand actual, tort and punitive damages from Wagner in an amount not less than $2,000,000 each.

## COUNT X
## CONSPIRACY AND DEFAMATION

135.    The facts alleged in the previous paragraphs of this complaint are incorporated herein and repeated in support of this Count.

136.    Squyars and Wagner conspired with the Lancours to willfully and maliciously injure Warren Barnes in his reputation in business, in violation of common law and Va.Code § 18.2-499, by conspiring to have him falsely arrested and baselessly maliciously prosecuted through the abuse of criminal process for ESMB having mailed an invoice to the Squyars and Talken.

137.    The conspirators arranged to meet Barnes under false pretenses and had him arrested at a time most inconvenient to obtaining release from a District Court judge who later dismissed the charge entirely, resulting in a planned, prolonged and intentional false imprisonment of Warren Barnes through conspiratorial acts of Squyars, Wagner and the Lancours.

138.    Accordingly, Warren Barnes demands actual, tort and punitive damages for the common law and statutory conspiracy that caused his false imprisonment, malicious prosecution and the abuse of process to which he was subject, and by which he has been defamed, from Wagner and the Squyars in an amount equal to three times

awarded damages, as provided by statute, and in an amount not less than $1,000,000 each.

**TRIAL BY JURY IS DEMANDED**

EVAN SAWYER MASTER BUILDER INC.,
WARREN BARNES, AND
KENNETH BARNES
*By Counsel:*
Timothy M. Murphy
VSB No. 31895

Timothy M. Murphy
Attorney at Law
1001-A Richmond Road
Williamsburg, VA 23185
(757) 220-4822
(757) 220-9912 - facsimile
tim@lawyersfinancial.org